**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SAM MALONE HOT WHEEL LLC and,**<br>**ZAHIDULLAH RAHMATI individually**<br>**and on behalf of others similarly situated,** | )<br>)<br>)<br>) |
| **Plaintiff,** | )   **CASE NO.**<br>)<br>) |
| **v.** | )<br>) |
| **ASAP TRANS CORP.,** | )<br>) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiffs Sam Malone Hot Wheel LLC ("Malone LLC") and Zahidullah Rahmati ("Rahmati") complain against Defendant ASAP Trans Corp. ("ASAP") alleging claims under the Truth in Leasing Act ("TILA"), 49 U.S.C. § 14704(a)(2), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/10a, and the Illinois common law of fraud and contract. Plaintiffs brings their claims as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### Introduction

1.     The Truth in Leasing Act ("TILA"), 49 U.S.C. § 14102(a), and its implementing regulations govern the terms and conditions under which owner-operator truckers lease equipment to federally-authorized motor carriers that transport freight in interstate commerce. *See* 49 C.F.R. § 376.12. TILA regulations require the motor carrier's equipment lease to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id.* § 376.12 (introductory paragraph).

2.      Plaintiffs allege that ASAP violated the TILA by paying Malone LLC and Rahmati, significantly less than their equipment leases required for each load that they transported. ASAP promised to pay Plaintiffs and other owner-operator drivers a certain percentage of the price of each load, but ASAP lied to them about that price, so it could pay them less than the lease required. ASAP also violated TILA by not paying interest on owner-operators' escrow deductions.

### Parties

3.      Plaintiff Sam Malone Hot Wheel LLC is a Texas limited liability company established and managed by its sole member Sam Malone. Malone worked as a truck driver for ASAP from January 2022 until May 2022. During all times that Malone worked for ASAP, neither he nor Malone LLC was an agent for purposes of the TILA. Malone is a Texas resident.

4.      Plaintiff Zahidullah Rahmati worked as a truck driver for ASAP from June 2021 to December 2021. During all times that Rahmati worked for ASAP, he was not an agent for purposes of the TILA. Rahmati is a Texas resident.

5.      Defendant ASAP is an Illinois corporation headquartered in Homer Glen, Illinois. ASAP is a transportation carrier licensed with the U.S. Department of Transportation. It contracts with drivers to transport its customers' freight in interstate commerce.

### Facts

6.      Certain ASAP drivers, called owner-operator drivers, used their own semi-tractors to perform their work. They either owned their own trucks or leased their trucks from a third-party. ASAP agreed to pay its owner-operator drivers a certain percentage of gross revenue for each load.

7.      From approximately January 2022 until May 2022, Malone performed line haul work for ASAP across several states. Through Malone Hot Wheel LLC, he worked for ASAP as an owner-operator for purposes of the TILA regulations. 49 C.F.R. § 376.2.

8.     From approximately June 2021 until December 2021, Rahmati performed line haul work for ASAP across several states. Rahmati worked for ASAP as an owner-operator for purposes of the TILA regulations. 49 C.F.R. § 376.2.

9.     Over the past three years, ASAP has contracted with well over 100 owner-operators to provide transportation service for its clients.

10.     Plaintiffs and other owner-operator drivers signed a substantially identical contract with ASAP (the "Lease Agreement").

11.     The Lease Agreement between the owner-operator drivers and ASAP served as the "equipment lease" required by regulations promulgated by the TILA, 49 C.F.R. § 376.12.

12.     As such, the owner-operator drivers leased their equipment (a semi-truck tractor) to ASAP, and in exchange, ASAP agreed to pay the drivers a certain percentage of gross revenue for each load when they performed line haul work.

13.      Plaintiffs' contracts, for example, promised an 82% rate of gross receipts for each load.

14.     ASAP lied and under-reported the gross receipt (or price) of each load in drivers' pay statements.

15.     ASAP directly pocketed the portion of gross receipts they concealed from each driver, and paid drivers' their promised portion, e.g. 82%, on the lower, underreported amount.

16.     For example, if the total gross receipt paid by a broker for a load was $1,500, ASAP might pocket $500 directly and pay the driver 82% of the remaining $1,000—$820, or 55% of the actual total gross receipt.

17.     In May 2022, Malone discovered that ASAP was lying and under-reporting the gross receipts of loads and thus paying him less than the amount required by his equipment lease with ASAP.

18.     That month, Malone hauled a load containing nearly 37,000 pounds of pallets from Mechanicsburg, Pennsylvania to Stone Mountain, Georgia. ASAP reported to Malone that the confirmed rate for the load was $1,800, from which Malone would be paid 82% or $1,476. The day after delivering the load, however, Malone spoke to a representative from Pegasus who had brokered the load and who confirmed to Malone that the actual price paid to ASAP for the load was $2,100.

19.     Rahmati also discovered that ASAP was lying about the price of loads. He spoke with a freight broker who reported that ASAP received more money for loads than ASAP reported on his weekly settlement statements. When Rahmati raised this issue with the ASAP Fleet Manager, he did not deny the allegation, but responded that Rahmati could get a job elsewhere if he did not like how ASAP was paying him.

20.     By lying to drivers about the gross receipts for their loads, ASAP fraudulently withheld substantial sums owed to drivers pursuant to their work agreements. For those owner-operator drivers with equipment leases, ASAP's failure to pay the promised compensation amount and lies to conceal the true amount owed violates the TILA and the ICFA. ASAP's failure to pay interest on the amounts it held in escrow likewise violates the TILA. For all ASAP drivers paid based on a percentage of gross receipts, ASAP's failure to pay the promised compensation amount and lies to conceal the true amount owed constitute breach of contract and common law fraud.

21.     ASAP also deducted $2500 from Plaintiffs and each of the other owner-operators to be kept in escrow as a "security deposit."

22.     ASAP never paid interest on Plaintiffs' escrow accounts.

23.     ASAP never paid interest on any of the other owner-operator drivers' escrow

accounts.

## Class Allegations

24.     Plaintiffs bring this action on behalf of themselves and on behalf of the following

classes of others similarly situated individuals or entities:

**TILA Class:** All individuals or entities that signed equipment leases with ASAP between July 11, 2018 and July 11, 2022.

**ICFA Class:** All individuals or entities that signed equipment leases with ASAP that required ASAP to pay them based on a percentage of the gross receipts of the loads they hauled between July 11, 2017 and July 11, 2022.

**Breach of Contract Class:** All individuals or entities that entered into written agreements with ASAP that required ASAP to pay them based on a percentage of the gross receipts of the loads they hauled between July 11, 2012 and July 11, 2022.

**Fraud Class:** All individuals or entities that entered into agreements with ASAP that required ASAP to pay them based on a percentage of the gross receipts of the loads they hauled between July 11, 2019 and July 11, 2022.

25.     The Classes defined above satisfy the requirements of Rule 23(a) and Rule 23(b)(3)

of the Federal Rules of Civil Procedure.

26.     The Classes are so numerous that joinder of all members is impracticable, and the

disposition of their claims in a class action will provide substantial benefits to both the parties and

the Court. Since July 11, 2018, ASAP has contracted with hundreds of owner-operator drivers who

signed equipment leases with the company, and since July 11, 2019, ASAP has contracted with

hundreds of drivers that entered into written agreements with ASAP that required ASAP to pay

them for driving based on a percentage of the gross receipts of the loads they hauled.

27.     Common questions of law and fact predominate over individual issues affecting only individual class members. Questions of law and fact common to the TILA Class include, among others, the following:

      a.  Whether ASAP paid interest on escrow funds as required by Truth in Leasing Act regulations;

      b.  Whether ASAP breached the terms of its equipment leases with owner-operator drivers, by paying them less than the promised percentage of gross receipts on each load.

28.     Questions of law and fact common to the Breach of Contract Class include, among others, the following:

      a.  Whether ASAP breached the terms of its written agreements with drivers, by paying them less than the promised percentage of gross receipts on each load.

29.     Questions of law and fact common to the Fraud and ICFA Classes include, among others, the following:

      a.  Whether ASAP intentionally deceived drivers by lying to them about the gross receipts for loads they hauled and on which their compensation was based.

30.     Plaintiffs will fairly and adequately protect the interests of all class members. Plaintiffs are members of each Class, and their claims are typical of the claims of all class members.

31.     Plaintiffs' interest in obtaining monetary relief for ASAP's violations of the class members is consistent with and not antagonistic to those of any person within the Classes. Plaintiffs have retained counsel competent and experienced in complex and class action litigation.

## Count I – Truth in Leasing Act
### (On behalf of TILA Class)

32.     Plaintiffs incorporate all prior allegations as if fully stated herein.

33.     ASAP is a motor carrier licensed with the U.S. Department of Transportation. Plaintiffs worked for ASAP as an owner-operator for purposes of TILA.

34.     Pursuant to the TILA regulations, ASAP signed an equipment lease with Plaintiffs and the other TILA Class Members.

35.     Under the TILA regulations, an authorized carrier may perform authorized transportation in leased equipment only if the written lease granting the use of the equipment meets the requirements of 49 C.F.R. § 376.12.

36.     Under the regulations, the required lease provisions must be "adhered to and performed by the authorized carrier." *Id.* § 376.12 (introductory paragraph). Finally, the regulations require the carrier to pay interest on the amounts that it holds in escrow. *Id.* § 376.12(k)(5).

37.     ASAP never paid interest on the amounts that it deducted in escrow from Plaintiffs' and the other owner-operator drivers' pay.

38.     In the equipment leases, ASAP agreed to pay Plaintiffs and the other owner-operator drivers a certain percentage of gross revenue for each load they hauled for ASAP.

39.     ASAP frequently underreported loads' gross revenue to pay Plaintiffs and the other owner-operator drivers less than the rate promised in their equipment leases.

40.     ASAP did not adhere to the terms of its leases with owner-operator drivers.

41.     Under 49 U.S.C. §14704(a)(2), ASAP is liable to Plaintiffs and the other owner-operator drivers for the damages that they suffered on account of ASAP's regulatory violations.

## PRAYER FOR RELIEF

Plaintiffs ask the Court to enter judgment against ASAP and issue an order:

    a.  Certifying this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

7

b.  Appointing Plaintiffs as representatives of the TILA Class;

c.  Requiring ASAP to provide each of the TILA Class members an accounting of all transactions with ASAP and provide all documentation necessary to confirm the validity of the computations;

d.  Entering judgment against ASAP for all damages that the TILA Class members incurred as a result of its violations of the Truth in Leasing Act regulations, including pre- and post-judgment interest; and

e.  Awarding Plaintiffs' counsel their reasonable attorneys' fees and costs for their prosecution of this action, pursuant to 49 U.S.C. § 14704(e).

## Count II – Breach of Contract
### (On behalf of Breach of Contract Class)

42.     Plaintiffs incorporate all prior allegations as if fully stated herein.

43.     Defendant ASAP entered contracts with Plaintiffs and other drivers that required ASAP, among other things, to pay the drivers based on a percentage of ASAP's gross revenue from loads the drivers hauled.

44.     Plaintiffs and other Breach of Contract Class members substantially performed all of their obligations under their contracts with ASAP.

45.     ASAP breached the contracts with Plaintiffs and other Breach of Contract Class members by underreporting the gross revenue for each load to pay them less than the rate promised in their written agreements.

## PRAYER FOR RELIEF

Plaintiffs ask this Court to enter judgment against Defendant ASAP and issue an order:

a.  Certifying this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b.  Appointing Plaintiffs as representatives of the Breach of Contract Class;

c.  Appointing the undersigned counsel as class counsel;

    d.   Awarding Plaintiffs and Breach of Contract Class members all amounts due and owing to them under their contracts with Defendant ASAP;

    e.   Awarding Plaintiffs' attorneys their fees based on the percentage of the common fund method; and

    f.   Awarding such other relief as this Court deems just and proper.

## Count III – Common Law Fraud
### (On behalf of Fraud Class)

46.    Plaintiffs incorporate all prior allegations as if fully stated herein.

47.    ASAP entered into agreements with Plaintiffs and other Fraud Class members that required ASAP, among other things, to pay Plaintiffs and other Fraud Class members based on a percentage of the gross revenues ASAP received from loads hauled by Plaintiffs and other Fraud Class members.

48.    In order to pay Plaintiffs and other Fraud Class members less than the amount they were owed, ASAP regularly lied to Plaintiffs and other Fraud Class members about the gross revenues it received for loads they hauled.

49.    Plaintiffs and other Fraud Class members relied on ASAP to report the true gross revenues it received for loads they hauled and were unaware that ASAP was paying them less than the amount to which they were entitled.

50.    ASAP's deceptive acts were designed to enrich ASAP without regard to the effect on Plaintiffs and other Fraud Class members.

## PRAYER FOR RELIEF

Plaintiffs ask this Court to enter judgment against Defendant ASAP and issue an order:

    a.   Certifying this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

    b.   Appointing Plaintiffs as representative of the Fraud Class;

c.  Appointing the undersigned counsel as class counsel;

d.  Awarding Plaintiffs and Fraud Class members all amounts due and owing to them under their contracts with Defendant ASAP, the full amounts of which ASAP has concealed by lying about the gross receipts of hauled loads;

e.  Awarding Plaintiffs and Fraud Class punitive damages for ASAP's gross fraud;

f.  Awarding Plaintiffs' attorneys their fees based on the percentage of the common fund method; and

g.  Awarding such other relief as this Court deems just and proper.

## Count IV – Illinois Consumer Fraud Act
### (On behalf of ICFA Class)

51.  Plaintiffs incorporate all prior allegations as if fully stated herein.

52.  ASAP deceived Plaintiffs and other ICFA Class members by lying and under-reporting the gross revenues ASAP received for loads hauled by Plaintiffs and other ICFA Class members.

53.  Pursuant to equipment leases with it owner-operator drivers, ASAP was required to pay Plaintiffs and other ICFA Class members based on a percentage of gross revenues ASAP received for loads hauled by Plaintiffs and other ICFA Class members. ASAP intended that Plaintiffs and other ICFA Class members would rely on ASAP's reports of the gross revenues so that ASAP could pay Plaintiffs and other ICFA Class members less than the amounts they were owed pursuant to their equipment leases.

54.  ASAP's deception happened in the course of trade or commerce.

55.  ASAP's deception proximately caused Plaintiffs and other ICFA Class members to be paid less than the amounts they were owed pursuant to their equipment leases with ASAP.

56.  ASAP's deceptive acts were designed to enrich ASAP without regard to the effect on Plaintiffs and other ICFA Class members

## **PRAYER FOR RELIEF**

Plaintiffs ask this Court to enter judgment against Defendant ASAP and issue an order:

a.  Certifying this case as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b.  Appointing Plaintiffs as representatives of the ICFA Class;

c.  Appointing the undersigned counsel as class counsel;

d.  Awarding Plaintiffs and ICFA Class members all amounts due and owing to them under their contracts with Defendant ASAP, the full amounts of which ASAP has concealed by lying about the gross receipts of hauled loads;

e.  Awarding Plaintiffs and ICFA Class members punitive damages for ASAP's gross fraud;

f.  Awarding Plaintiffs' counsel their reasonable attorneys' fees and costs for their prosecution of this action, pursuant to 815 ILCS 505/10a(c).

g.  Awarding such other relief as this Court deems just and proper.

## **Jury Demand**

Plaintiffs demand trial by jury on all issues as to which a jury trial is available.


Respectfully submitted,

/s/ Christopher J. Wilmes
One of the Attorneys for the Plaintiff


Christopher J. Wilmes
Justin Tresnowski
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
Three First National Plaza
70 West Madison Street, Suite 4000
Chicago, Illinois 60602
312-580-0100

11