**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SAM MALONE and DONALD BROWN, individually and on behalf of others similarly situated,** | ) ) ) | |
| | ) | **CASE NO. 22-CV-3572** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Georgia N. Alexakis** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| **ASAP TRANS CORP. and KRISTINA PETROSIUS,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

Christopher J. Wilmes
Justin Tresnowski
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison St. Suite 4000
Chicago, IL 60602
312-580-0100
cwilmes@hsplegal.com
jtresnowski@hsplegal.com

## <u>TABLE OF CONTENTS</u>

I.    **Both Proposed Subclasses Exceed the Presumptive Numerosity Threshold, and Geographic Dispersion Only Reinforces the Impracticability of Joinder (Rule 23(a)(1))**……..…………………………………1

II.   **The Proposed Classes Present Common Questions Resolvable by Common Proof (Rule 23(a)(2)), and Those Common Questions Predominate (Rule 23(b)(3))**……………………….……………………………..3

    A.  **The payment provisions in Contract Types 1, 2, 3, 4, and 7 are Materially the same and raise the same common issues.**..……………...………3

    B.  **Defendants identify no genuine commonality concern with the IWPCA Class**………………….…………………………………...……5

III.  **Potential Defenses Against Some Putative Class Members Do Not Make Plaintiffs Atypical (Rule 23(a)(3))**……………………………...……6

IV.  **Defendants Do Not Dispute Class Counsel's Adequacy and Fail to Identify Any Disabling Conflict For Malone or Brown (Rule 23(a)(4))**…………7

    A.  **Defendants' assertion that Malone was not an owner-operator is wrong and, in any event, does not affect his adequacy as a representative of either class**………………………………………….8

    B.  **Neither Brown's work for a few months as a recovery driver nor his work for another trucking company affects his adequacy**………………10

    C.  **Plaintiffs are not inadequate representatives because some putative class members were subject to additional categories of unlawful deductions**…………………………………………………11

    D.  **Arbitration and class waiver provisions in some putative class members' contracts do not create a disabling conflict**………………………13

    E.  **Any concerns now about the scope of the class can be addressed by modifying the class definition**……………………………………………16

V.   **A Class Action is Superior to Individual Litigation (Rule 23(b)(3))**……………17

**Conclusion**……………………………………………………………………………17

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ............................................................................................1

*Bakov v. Consol. World Travel, Inc.*,
No. 15 C 2980, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019) .................................12

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018).............................................................................11

*Bruger v. Olero, Inc.*,
434 F. Supp. 3d 647 (N.D. Ill. 2020) ......................................................................9

*CE Design Ltd. v. King Architectural Metals, Inc.*,
637 F.3d 721 (7th Cir. 2011)...............................................................................10

*Chapman v. First Index, Inc.*,
796 F.3d 783 (7th Cir. 2015)...............................................................................12

*Chavez v. Don Stoltzner Mason Contractor*, Inc.,
272 F.R.D. 450 (N.D. Ill. 2011) ............................................................................2

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*,
797 F.3d 426 (7th Cir. 2015)................................................................................5

*Costello v. BeavEx, Inc.*,
810 F.3d 1045, 1060 (7th Cir. 2016).......................................................................5

*Eaton v. Ascent Resources-Utica, LLC*,
No. 2:19-CV-03412, 2024 WL 1458457 (S.D. Ohio Apr. 4, 2024) ..................14, 16

*Esquinca v. Ill. Workers' Comp. Comm'n*,
2016 IL App (1st) 150706WC ...............................................................................9

*Forby v. One Techs., LP*,
No. 3:16-CV-856-L, 2020 WL 4201604 (N.D. Tex. July 22, 2020) ..................13, 14

*Garcia v. Jcpenney Corp., Inc.*,
No. 12-CV-3687, 2016 WL 878203 (N.D. Ill. Mar. 8, 2016)...............................16

*Goldberg v. Focus Affiliates, Inc.*,
152 F. Supp. 2d 978 (N.D. Ill. 2001)……………………………………….......……………1

*Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*,
  2016 IL App (1st) 161612……………………………………………………………1, 2

*Hodge Bros. v. DeLong Co.*,
  942 F. Supp. 412 (W.D. Wis. 1996).................................................................1

*In re Allstate Corp. Sec. Litig.*,
  966 F.3d 595 (7th Cir. 2020).........................................................................4

*In re Safeco Insurance Company of America*,
  585 F.3d 326 (7th Cir. 2006).......................................................................12

*In re Titanium Dioxide Antitrust Litig.*,
  962 F. Supp. 2d 840 (D. Md. 2013) .......................................................13, 16

*Jensen v. Cablevision Systems Corp.*,
  372 F. Supp. 3d 95 (E.D.N.Y. 2019) ......................................................14, 15

*Johnson v. BLC Lexington, SNF, LLC*,
  No. CV 5:19-064-DCR, 2020 WL 3578342 (E.D. Ky. July 1, 2020)....................13

*Johnson v. Diakon Logistics*,
  No. 16-CV-06776, 2020 WL 405636 (N.D. Ill. Jan. 23, 2020) ..............................5

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
  702 F.3d 364 (7th Cir. 2012).......................................................................15

*Jones v. Illinois Bell Telephone Co.*,
  No. 15 C 2724, 2015 WL 9268418 (N.D. Ill. Dec. 21, 2015)...........................12

*Kessler v. Samsung Elecs. Am. Inc.*,
  No. 17-C-0082, 2019 WL 13165457 (E.D. Wis. Feb. 13, 2019)........................15

*Latipov v. AN Enter. Inc.*,
  No. 23 C 1859, 2025 WL 1518058 (N.D. Ill. May 28, 2025)............................12

*Mazzeri v. Rock N Around Trucking, Inc.*,
  246 F.3d 956 (7th Cir. 2001).........................................................................9

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) .......................................................................16

*Muse v. Holloway Credit Sols.*, LLC,
  337 F.R.D. 80 (E.D. Pa. 2020) .....................................................................2

*Prokhorov v. IIK Transp., Inc.*,
    No. 20 CV 6807, 2024 WL 3694523 (N.D. Ill. Aug. 7, 2024) ..........................................10, 11

*Prokhorov v. IIK Transp., Inc.*,
    No. 20 CV 6807, 2023 WL 2711599 (N.D. Ill. Mar. 30, 2023) ..................................................6

*Renton v. Kaiser Found. Health Plan, Inc.*,
    No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) ....................................13

*Rivers v. Southway Carriers, Inc.*,
    No. 23 C 738, 2024 WL 579734 (N.D. Ill. Feb. 13, 2024)......................................................17

*Santangelo v. Comcast Corp.*,
    No. 15-CV-0293, 2017 WL 6039903 (N.D. Ill. Dec. 6, 2017) ..........................................14, 15

*Scheurer v. Fromm Fam. Foods LLC*,
    863 F.3d 748 (7th Cir. 2017)..................................................................................................1

*Shimko v. Jeff Wagner Trucking, LLC*,
    No. 11-CV-831-WMC, 2014 WL 7525657 (W.D. Wis. Mar. 10, 2014)..................................7

*Shimko v. Jeff Wagner Trucking, LLC*,
    No.11-CV-831-WMC, 2014 WL 7355190 (W.D. Wis. Dec. 24, 2014)..................................8

*Stewart v. Interland, Inc.*,
    No. 23-CV-3306, 2025 WL 748214 (N.D. Ill. Mar. 7, 2025)................................................17

*Svoboda v. Amazon.com, Inc.*,
    No. 21 C 5336, 2024 WL 1363718 (N.D. Ill. Mar. 30, 2024) ..............................................15

*Tan v. Grubhub, Inc.*,
    No. 15-CV-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016)............................14, 15

*Tsybikov v. Dovgal*,
    No. 19 C 3334, 2022 WL 1238853 (N.D. Ill. Apr. 27, 2022)..............................................5, 6

*Vera v. HomeDeliveryLink, Inc.*,
    No. 23 CV 14278, 2025 WL 20468 (N.D. Ill. Jan. 2, 2025)................................................5, 6

*Wagner v. NutraSweet Co.*,
    95 F.3d 527 (7th Cir. 1996)...............................................................................................7, 13

*Wallace v. Chicago Hous. Auth.*,
    224 F.R.D. 420 (N.D. Ill. 2004) ..............................................................................................7

*Westways World Travel, Inc. v. AMR Corp.*,
   218 F.R.D. 223, 234 (C.D. Cal. 2003) ....................................................................................1

*Yata v. BDJ Trucking Co.*,
   No. 17-CV-03503, 2020 WL 1062332 (N.D. Ill. Mar. 5, 2020).................................................17

**Regulations**

49 C.F.R. § 376.2 ……………………………………………………………………………..8

49 C.F.R. § 376.12……………………………………………………………………….. 3, 9

56 Ill. Admin. Code § 300.720………………………………………..……………………….6

Plaintiffs submit the following reply in support of their motion for class certification:

## I. Both Proposed Subclasses Exceed the Presumptive Numerosity Threshold, and Geographic Dispersion Only Reinforces the Impracticability of Joinder (Rule 23(a)(1)).

As set forth in Plaintiffs' brief supporting class certification, 51 putative members of the TILA/Breach of Contract Class and 402 putative members of the IWPCA Class are not subject to mandatory arbitration or class waiver provisions as to Defendant Petrosius. ECF No. 236 ("Memorandum" or "Mem.") at 15. Defendants do not rebut or contest these figures. Defendants also fail to address, and thereby effectively concede, the point that Plaintiffs need only establish numerosity as to Petrosius because Plaintiffs allege that she acted jointly with ASAP. *Id.* at 16 (citing *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 234 (C.D. Cal. 2003)).

Defendants attempt to get around the issue by asserting that Petrosius can somehow enforce arbitration and class waiver provisions in contracts that do not even mention her. But Illinois law is directly to the contrary, and the old federal cases Defendants cite are inapplicable and no longer good law. At one time, federal courts applying the Federal Arbitration Act did rely on the "federal policy favoring arbitration" to compel arbitration of claims against even non-signatories to arbitration agreements. *See Goldberg v. Focus Affiliates, Inc.*, 152 F. Supp. 2d 978, 981 (N.D. Ill. 2001); *Hodge Bros. v. DeLong Co.*, 942 F. Supp. 412, 414 (W.D. Wis. 1996). For reasons Plaintiffs have discussed, however, the FAA does not apply here. *See* Mem. at 16-17. Moreover, after the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), federal courts no longer follow the approach of *Goldberg* or *Hodge* and instead rely on applicable state contract law to determine whether an agreement applies to a non-signatory. *See Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 750 (7th Cir. 2017) (citing *Arthur Andersen*). Here, Defendants identify no applicable exception to the general rule in Illinois that contractual terms—like arbitration or class waiver provisions—do not bind non-signatories. *See Guarantee Tr. Life Ins. Co. v. Platinum*

*Supplemental Ins., Inc.*, 2016 IL App (1st) 161612, ¶ 38. The only theory Defendants suggest—that an agent may invoke an arbitration agreement on behalf of its principal—is one that Illinois courts have repeatedly rejected. *See, e.g.*, *id.* ¶ 39 (affirming prior rejection of "agency" exception).

Defendants accordingly fail to rebut Plaintiffs' showing that 51 members of the proposed TILA/Breach of Contract Class and 402 members of the IWPCA Class have viable claims.[1] Thus, both classes exceed the 40-member threshold at which numerosity is presumed. *See, e.g.*, *Chavez v. Don Stoltzner Mason Contractor*, Inc., 272 F.R.D. 450, 454 (N.D. Ill. 2011). Defendants also do not dispute that the putative class is geographically dispersed. Instead, they assert that geographic dispersion is not a Rule 23(a)(1) factor anymore now that parties can conduct proceedings remotely. Resp. (ECF No. 253) at 23-24. But Defendants cite no authority suggesting that the geographic dispersion factor has been eliminated. In addition, even with the availability of remote videoconferencing, class members may, for example, prefer to attend their depositions in person with their attorneys—Malone and Brown both did—and coordinating in-person depositions for dozens of plaintiffs residing throughout the country remains cumbersome and costly. *See Muse v. Holloway Credit Sols.*, LLC, 337 F.R.D. 80, 87 (E.D. Pa. 2020) (noting that technological advances may have "blunted the effect of geographic dispersion" but that dispersion "may still cause logistical problems, such as when a defendant needs to depose the joined plaintiffs").

Because Defendants fail to rebut Plaintiffs' numerosity showing when considering drivers' claims against Petrosius, neither Plaintiffs nor the Court need to address the proper interpretation of the five Type 3 contracts or the validity of the ten partially signed Type 2 and Type 7 contracts

---

[1] For the reasons just discussed, this would be true even if the Court were to amend the class definition to exclude those class members whose contracts arguably require arbitration or waiver of class claims against both Defendants. *See* § IV(D) below.

discussed in Plaintiffs' Memorandum.[2]

## II. The Proposed Classes Present Common Questions Resolvable by Common Proof (Rule 23(a)(2)), and Those Common Questions Predominate (Rule 23(b)(3)).

### A. The payment provisions in Contract Types 1, 2, 3, 4, and 7 are materially the same and raise the same common issues.

Plaintiffs propose a common interpretation of the payment provisions in Contract Types 1-4 and 7 for the TILA/Breach of Contract Class. Each contract states that ASAP will pay the driver a percentage of an agreed "rate" (or "price") for each "line haul" (or "shipment") the driver makes. *See* Mem. at 3. Plaintiffs contend that any driver would understand the contracts to mean the same thing: ASAP offered drivers a load ("line haul" or "shipment") that paid a given rate set by the freight broker, and if the drivers "agreed" to take the load at that rate, ASAP would pay the driver the "specified percentage" of the broker rate.

Plaintiffs intend to support this interpretation via common authorities and proof, namely 1) industry practice, as codified at 49 C.F.R. § 376.12(d), of paying drivers a percentage of the broker-set rate; 2) the very idea of percentage-based payment, which presumes a rate set by a third party; and 3) evidence that ASAP dispatchers went out of their way to ensure that drivers never learned the true broker rates for the loads they hauled, *see* Mem. at 4-5.

Defendants argue in cursory fashion that the contracts' payment terms are too different to allow for common resolution. Resp. at 18. But they do not explain how the minor textual differences they highlight (like the addition of the word "exclusively") might result in different interpretations of the provisions at issue. Instead, the bulk of Defendants' commonality argument

---

[2] In addition, though former Plaintiff Rahmati's individual status has minimal bearing on the overall numerosity analysis, Plaintiffs note for the record that there is no basis to exclude him from the class, as the claims he formerly asserted as a Named Plaintiff were dismissed "without prejudice" for failure to prosecute. ECF No. 141 at 3.

regarding the TILA/Breach of Contract Class goes to the merits of Plaintiffs' claims. They argue that ASAP never expressly promised to pay drivers a percentage of the broker rate and that ASAP agreed only to pay drivers a percentage of the rate to which ASAP and the driver agreed, regardless of the broker rate. Those may well be appropriate arguments for trial or at summary judgment, but they do not bear on the Rule 23(a)(2) analysis. Defendants even admit that they believe there is a "common answer" ("No") to the question of whether ASAP breached its leases by paying drivers less than the promised percentage of the load rate. Resp. at 16. But the parties' disagreement about the answer to the question does not mean that the question is not a common one susceptible to class-wide resolution. *See In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 604 (7th Cir. 2020) ("At class certification, the issue is not whether plaintiffs will be able to prove these elements on the merits, but only whether their proof will be common for all plaintiffs, win or lose.").

Defendants do make one argument concerning the purported need for individualized proof, but the argument rests on a mischaracterization (or at least a misunderstanding) of Plaintiffs' claims. If Plaintiffs contended that driver compensation was based on the rate "agreed to by the driver and ASAP per load hauled," as Defendants suggest, proof of individual driver-dispatcher communications might be necessary to establish the promised rate for each load hauled. Resp. at 21. But that is the opposite of Plaintiffs' claim here: Plaintiffs contend that, under the drivers' contracts, their compensation was to be based on the rate the broker paid ASAP for each load. No individualized proof is required, as Defendants have produced centralized data showing the difference between broker rates and driver pay for each load, establishing the common pattern of underpayment. *See* Mem. at 5. The fundamental question for the TILA/Breach of Contract Class is whether ASAP agreed to pay drivers a percentage of the broker rate for each load, and the answer to that question will be the same for each class member.

4

Plaintiffs therefore satisfy Rule 23(a)(2) for the TILA/Breach of Contract Class. Because Defendants do not identify any other individual issues that might predominate over the common issues Plaintiffs have identified, the TILA/Breach of Contract satisfies Rule 23(b)(2) as well.

### B. Defendants identify no genuine commonality concern with the IWPCA Class.

Regarding the IWPCA Class, Defendants contend that company drivers signed contracts purportedly authorizing certain deductions and that the absence of these provisions in other drivers' contracts somehow defeats commonality. Resp. at 21. But commonality "does not require that class members present identical factual situations." *Johnson v. Diakon Logistics*, No. 16-CV-06776, 2020 WL 405636, at \*4 (N.D. Ill. Jan. 23, 2020). Rather, "what matters is whether there is a common contention whose truth or falsity 'will resolve an issue that is central to the validity of each claim.'" *Id.* (quoting *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015)). Here, the IWPCA class presents the common question of whether drivers were misclassified as independent contractors. Plaintiffs intend to answer that question with common proof: (a) the standard work rules for drivers showing ASAP's control over their work under part A of the IWPCA's ABC test and (b) common evidence regarding the usual course and usual place of ASAP's business under part B of the test. *See* Mem. at 11-12. That single common question is sufficient to establish commonality. *See, e.g.*, *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016); *Vera v. HomeDeliveryLink, Inc.*, No. 23 CV 14278, 2025 WL 20468, at \*3 (N.D. Ill. Jan. 2, 2025); *Tsybikov v. Dovgal*, No. 19 C 3334, 2022 WL 1238853, at \*3 (N.D. Ill. Apr. 27, 2022); *Johnson*, 2020 WL 405646, at \*4.

Even going beyond the threshold question of misclassification, the question of whether drivers authorized the deductions at issue is also subject to common proof and analysis. To the extent drivers' contracts had different deduction provisions or were governed by different versions

of the applicable IWPCA regulation, common issues for all drivers still include, for example, whether their agreements specifically provided for "the period of time" over which deductions would continue, or whether drivers could voluntarily withdraw from the deductions, as required under the original and amended versions of 56 Ill. Admin. Code § 300.720(b). These common questions, in addition to the threshold misclassification question, predominate over any individual questions, thereby satisfying Rule 23(a)(2) and Rule 23(b)(2). *See, e.g.*, *Vera*, 2025 WL 20468, at *6 (whether drivers were employes predominates over individual issues); *Prokhorov v. IIK Transp., Inc.*, No. 20 CV 6807, 2023 WL 2711599, at *9 (N.D. Ill. Mar. 30, 2023); *Tsybikov*, 2022 WL 1238853 at *4 (common questions predominated despite drivers' different expenses, contracts, and alleged authorizations); *Johnson*, 2020 WL 405636, at *7 (misclassification issue predominates over issues regarding individual drivers' work or specific deductions).

## III. Potential Defenses Against Some Putative Class Members Do Not Make Plaintiffs Atypical (Rule 23(a)(3)).

To the extent Defendants challenge the typicality of Plaintiffs' claims, they appear to contend that Plaintiffs' claims are atypical because Defendants can assert certain defenses against some putative class members that they do not have against Malone or Brown. Defendants argue, for example, that Malone's claims are not typical of drivers with Type 7 Contracts because those drivers were not owner-operators under TILA and their contracts include a unique two-week limitation period for challenging the amounts they were paid. Resp. at 22-23.[3] Defendants also argue that the existence of arbitration and class waiver provisions in certain putative members'

---

[3] On the merits, the purported two-week limitations defense is frivolous: the two-week provision clearly applies to correction of "clerical errors" and could not possibly limit drivers' ability to challenge underpayments resulting from false representations about the load price.

contracts makes Malone's and Brown's claims atypical.[4] But whether Defendants may assert defenses against some of the class members is irrelevant under Rule 23(a)(3). The Seventh Circuit has long held that "[t]ypicality under Rule 23(a)(3) should be determined with reference to the *company's actions*, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (emphasis added).

Here, ASAP's unlawful actions were essentially the same as to each class member. With respect to the TILA/Breach of Contract Class, ASAP promised to pay drivers a percentage of the price of each load they agreed to haul and then paid them based on a much lower rate. With respect to the IWPCA Class, ASAP classified the drivers as independent contractors and made regular deductions from their wages without obtaining their express consent at the time of deduction. The actions Brown and Malone are challenging on behalf of themselves are the same as those they are challenging on behalf of the class. Plaintiffs therefore satisfy Rule 23(a)(3).

## IV. Defendants Do Not Dispute Class Counsel's Adequacy and Fail to Identify Any Disabling Conflict For Malone or Brown (Rule 23(a)(4)).

Defendants devote well over half of their response brief to purported concerns about Plaintiffs' adequacy under Rule 23(a)(4). *See* Resp. at 4-16. By making adequacy their focus, Defendants appear not to recognize that "[t]he adequacy threshold is a low one: as long as the Court is assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest the requirement is met." *Wallace v. Chicago Hous. Auth.*, 224 F.R.D. 420, 429 (N.D. Ill. 2004) (cleaned up). Defendants do not dispute that Plaintiffs' attorneys are experienced and accomplished in class action litigation and thus apparently concede counsel's adequacy. Though Defendants do purport to challenge Brown's and

---

[4] To the extent Defendants also challenge the typicality of Malone's or Brown's IWPCA claims, Plaintiffs address that contention in sections IV(A)-(C), below.

Malone's adequacy, they fail to identify any genuine or material conflict between Plaintiffs and the putative class that would prevent either one from fairly and adequately representing the class's interests. Indeed, much of Defendants' purported adequacy challenge boils down to an attack on the breadth of the proposed class definitions, but to the extent definitional concerns arise, the Court has various tools to address them short of denying class certification, such as modifying the class definition now or after the class certified.

### A. Defendants' assertion that Malone was not an owner-operator is wrong and, in any event, does not affect his adequacy as a representative of either class.

Defendants maintain that Malone was somehow (1) not an "owner" under the TILA and is therefore (2) not an adequate representative for the TILA class. Resp. at 8-11. Both premises of the argument are incorrect. Under the TILA, an "owner" includes those without title to the truck who nevertheless have the right to exclusive use of the equipment. 49 C.F.R. § 376.2(d). Malone testified that ASAP leased a truck to him (i.e., granted him exclusive use of the truck) and that he leased the same truck back to ASAP. Ex. B (ECF 236-2) at 146:7-8. Defendants claim Malone's contract contradicts this arrangement, but to the contrary, the contract expressly confirms the parties' understanding that Malone was an owner—that he ("CONTRACTOR") "own[ed] or ha[d] the right to make [his truck] available for lease," ECF 224-1 at ASAP-000005—and that he granted ASAP ( "COMPANY") possession and use of the equipment (i.e., leased it) during the agreement, *id.* at 6. Defendants suggest that such a leaseback or "double leasing" arrangement is preposterous and inconsistent with the TILA, citing *Shimko v. Jeff Wagner Trucking, LLC*, No. 11-CV-831-WMC, 2014 WL 7525657, at *5 (W.D. Wis. Mar. 10, 2014). But in the cited *Shimko* opinion, the court merely noted the apparent oddity of the plaintiff's alleged leaseback arrangement while still allowing the plaintiff's TILA claims to *proceed*. When the court subsequently denied summary judgment, it expressly acknowledged that the TILA regulations contemplate such "lease-to-

leaseback arrangements" as meeting the ownership definition. *Shimko v. Jeff Wagner Trucking, LLC*, No.11-CV-831-WMC, 2014 WL 7355190, at *3 (W.D. Wis. Dec. 24, 2014).

Even if Defendants were correct about Malone's status, though, their argument is one for summary judgment or trial, not for class certification. Defendants do not suggest that Malone's status (or non-status) as an owner is different from the status of any putative class member; thus, they fail to explain how Malone's ownership status generates any antagonism or conflict between Malone and the class members that would make him an inadequate representative. ASAP's lease agreements with TILA class members include the same lease-to-leaseback arrangement, and whether the TILA applies to those leases is a question to be answered on a class-wide basis.

Nor does Malone's status as an owner-operator affect his adequacy to represent the IWPCA class. *See* Resp. at 13-14. Defendants suggest that Malone cannot consistently claim to be an owner-operator and an employee. Yet the TILA regulations make clear that status as an owner-operator does not affect one's status as an independent contractor or an employee. 49 C.F.R. § 376.12(c)(4). And the cases Defendants cite either hold that owner-operator drivers *can* be employees (*Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 656 (N.D. Ill. 2020)), or apply a test other than the IWPCA's ABC test (*Mazzeri v. Rock N Around Trucking, Inc.*, 246 F.3d 956 (7th Cir. 2001), and *Esquinca v. Ill. Workers' Comp. Comm'n*, 2016 IL App (1st) 150706WC, ¶ 47)). Moreover, Defendants fail to explain how the purported tension between Malone's TILA and IWPCA claims creates any conflict between Malone and the class that would make him inadequate. Malone, like all putative IWPCA class members, was subject to the same ASAP rules, making the drivers employees under part A of the ABC test. He and the other drivers drove trucks for ASAP over the road, making them employees under Part B of the ABC test. And Defendants took deductions from his and the other drivers' wages without their written consent at the time of

9

deduction. Malone's IWPCA claims are typical of the class, and he is an adequate representative.

**B.     Neither Brown's work for a few months as a recovery driver nor his work for another trucking company affects his adequacy.**

It is undisputed that Brown began working for ASAP in September 2020 as a driver who hauled loads across the country for ASAP. Ex. K to Mem. (Brown Dep.) at 33-34. After more than a year of work exclusively hauling loads, Brown began to do some "recovery" work for ASAP. *Id.* at 115, 125. When doing recoveries, Brown still used his commercial driver's license to drive ASAP trucks across the country, but instead of delivering cargo from point A to point B, he would go "recover" new or abandoned ASAP trucks and drive them back to ASAP's truck yard. *See, e.g.*, *id.* at 106-08. At some point in 2022, while still working for ASAP, Brown also began doing recovery work for Forsage, another motor carrier.

Despite ASAP's contention, neither Brown's recovery work for ASAP or Forsage subjects him to any unique defense that will "distract" Brown to the detriment of the class and thereby make him an inadequate representative. *Cf. CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). That Brown did some recovery work is not a defense to his claims under part B of the ABC test. It is undisputed that Brown, like the other class members, also drove over the road delivering loads for ASAP. Thus, the Court will determine his and all other drivers' employment status under part B by asking whether delivering loads over the road is within the "usual course" of ASAP's business.

In addition, to the extent Brown's recovery work could be viewed as a defense at all, it is an "insubstantial" one. *Id.* at 728 ("Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her focus . . . on the interests of the class[.]"). Driving trucks across the country to return them to ASAP is clearly within the usual course of ASAP's business as a motor carrier. "There may be

many different roles at a company that all contribute to its usual course of business." *Prokhorov v. IIK Transp., Inc.*, No. 20 CV 6807, 2024 WL 3694523, at *8 (N.D. Ill. Aug. 7, 2024). Petrosius herself admitted that having a "recovery guy" is part of ASAP's business, Ex. B to Resp. at 12, and contrary to Defendants' unsupported claim, Brown was not the only ASAP employee whom ASAP sent to recover abandoned trucks in the course of its business, Ex. K at 125-26. Brown's recovery work does not subject him to a unique part B defense.

Nor does Brown's work for Forsage give Defendants a unique part A defense against Brown. To the extent Defendants contend that Brown's ability to work for another company shows that ASAP did not control his work—a contention Plaintiffs dispute—that defense is not unique to Brown. It is clear from each driver's contract that ASAP did not forbid them from working for other companies while working for ASAP. Defendants may try to use that fact to support their alleged part A defense on the merits. But as discussed above, Plaintiffs will rely on evidence of standard driver rules to rebut that defense, and Brown's work for Forsage has no effect on his ability to present that evidence fairly and adequately on behalf of himself and the class.

### C. Plaintiffs are not inadequate representatives because some putative class members were subject to additional categories of unlawful deductions.

Defendants contend that Plaintiffs are inadequate because the proposed IWPCA definition includes categories of deductions that were not included in the complaint and were never taken from Plaintiffs' wages. Resp. at 11-12. Though included in the section on adequacy, the argument reads like a challenge to the typicality of Plaintiffs' claims. What matters for typicality, however, is whether Plaintiffs' "claims arise from the same events or course of conduct that give rise to the putative class members' claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). The individual claims need not be factually identical as long as they share "the same essential characteristics." *Id.* Here, Plaintiffs' and the putative class's IWPCA claims are based on

the same course of conduct: ASAP's practice of classifying drivers as independent contractors and deducting from their wages without their express consent at the time of deduction. Thus, though the deductions may have varied by category, Plaintiffs' claims share the essential characteristics of each putative members' claims.

To the extent Defendants challenge Plaintiffs' adequacy on this ground, Defendants do not explain—and it is difficult to imagine—how differences in the categories of deductions challenged would create a conflict or otherwise undermine Plaintiffs' ability to challenge the legality of any unauthorized deduction. *See, e.g.*, *Latipov v. AN Enter. Inc.*, No. 23 C 1859, 2025 WL 1518058, at *5 (N.D. Ill. May 28, 2025) (agreeing with the court in *Prokhorov* that "varying deductions or reimbursements" among putative class members did not provide a basis to deny class certification).

Finally, any difference between the definition proposed in Plaintiffs' motion and the definition proposed in their complaint is no basis to deny certification under Rule 23(a)(4) or any other provision of Rule 23. Class action plaintiffs "are not required to amend their Complaint prior to filing for class certification to delineate the exact contours of their class." *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *15 (N.D. Ill. Mar. 21, 2019). Indeed, the complaint need not include a proposed class definition at all. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015). The cases Defendants cite are not to the contrary; indeed, they are irrelevant. *In re Safeco Insurance Company of America*, 585 F.3d 326, 331 (7th Cir. 2006), is about whether a class certification order created "new claims" that commenced a new action for purposes of removal jurisdiction under the Class Action Fairness Act; it has nothing to do with this case. *Jones v. Illinois Bell Telephone Co.*, No. 15 C 2724, 2015 WL 9268418 (N.D. Ill. Dec. 21, 2015), likewise says nothing about whether plaintiffs must amend their complaint to include the same proposed class definition as the one included in their motion for class certification. Defendants

also cannot genuinely claim any prejudicial lack of notice when three of the four categories of deductions to which they now object were listed as challenged deductions in Malone's interrogatory answers, discussed extensively throughout depositions, and included as topics in Plaintiffs' Rule 30(b)(6) Deposition Notice to ASAP—to which ASAP never objected. *See* Ex. 1 hereto (Malone Am. Interrogatory Answers) ¶ 16 ("Plaintiff also seeks to recover all deductions from his pay and pay of other drivers for . . . repairs, accidents, and fines."); Ex. 2 hereto (Rider A to Am. Notice of 30(b)(6) Deposition) ¶ 2 (seeking information about written authorizations for deductions for repairs, tickets, and violations).

### D. Arbitration and class waiver provisions in some putative class members' contracts do not create a disabling conflict.

Though Defendants contend that alleged arbitration and class waiver provisions in the contracts of some putative class members make Plaintiffs inadequate, Resp. at 4-7, they do not spell out how the existence of those provisions affects Malone's or Brown's adequacy. Defendants cite various cases where courts have denied class certification based on concerns about putative members' arbitration clauses, but each case is distinguishable in key respects. In two of the cited cases, courts found that potential arbitration or similar provisions in some putative members' contracts made the named plaintiffs' claims *atypical*. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 862 (D. Md. 2013); *Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001), *7.[5] Those cases, however, are in direct conflict with the Seventh Circuit's rule that particularized defenses against certain class members have no bearing on typicality. *See Wagner*, 95 F.3d at 534. In another cited case, valid

---

[5] Another cited case, *Johnson v. BLC Lexington, SNF, LLC*, No. CV 5:19-064-DCR, 2020 WL 3578342, at *6 (E.D. Ky. July 1, 2020), also appears to have been decided primarily on typicality grounds, as the court offered no reasoning to support its conclusion that the lack of an enforceable arbitration clause rendered the plaintiff inadequate. *Id.* at *7.

arbitration clauses in every other putative member's contract defeated class certification because they made the named plaintiff a "class of one." *Forby v. One Techs., LP*, No. 3:16-CV-856-L, 2020 WL 4201604, at *9 (N.D. Tex. July 22, 2020). Here, by contrast, 27 putative class members have no arbitration or class waiver provision in their contracts, and out of the 400-plus members in the proposed classes, only 55 have contracts purporting to require arbitration or waive class claims against both Defendants. And in *Eaton v. Ascent Resources-Utica, LLC*, the court actually *granted* Plaintiffs' Rule 23 motion, concluding that the presence of arbitration clauses in some putative members' contracts did not preclude certification; the Sixth Circuit agreed when the defendant petitioned to appeal. No. 2:19-CV-03412, 2024 WL 1458457, at *2 (S.D. Ohio Apr. 4, 2024). It was only after class certification, when evidence showed that a majority of the leases at issue (over 4,000) included arbitration clauses, that the court decided to modify the class definition (not to decertify the class, as Defendants state). *Id.* at *6.

Ultimately, only two of the cases Defendants cite involving putative class members with arbitration clauses—*Santangelo v. Comcast Corp.*, No. 15-CV-0293, 2017 WL 6039903, at *4 (N.D. Ill. Dec. 6, 2017), and *Jensen v. Cablevision Systems Corp.*, 372 F. Supp. 3d 95 (E.D.N.Y. 2019)—raise a genuine Rule 23(a)(4) issue, but the concern in those cases is not present here. In both *Santangelo* and *Jensen*, the named plaintiffs were among a very small percentage of consumers who opted out of arbitration or class waiver provisions. Given the percentage of putative class members affected by the provisions, the issue of their enforceability would necessarily "go to the heart of the litigation." *Jensen*, 372 F. Supp. 3d at 125. By having voluntarily opted out, however, the plaintiffs could not credibly challenge the provisions' enforceability on grounds that voluntary opt-outs were impossible or that the provisions were "not sufficiently noticeable." *Santangelo*, 2017 WL 6039903, at *4 (citing *Tan v. Grubhub, Inc.*, No. 15-CV-05128-

14

JSC, 2016 WL 4721439, at *3 (N.D. Cal. July 19, 2016)); *see also Jensen*, 372 F. Supp. 3d at 123 (same); *Tan*, 2016 WL 4721439, at *3 ("Lawson—having opted out of two separate agreements— would be unable to credibly make several procedural unconscionability arguments on behalf of unnamed class members."). Indeed, the fact that plaintiffs opted out of arbitration would inevitably be used as evidence *against the class members* when they attempted to challenge the provisions' enforceability. There was thus a genuine conflict between the plaintiffs and the putative class members making them inadequate representatives under Rule 23(a)(4).

Here, by contrast, the arbitration and class waivers purportedly apply to a much smaller percentage of the putative class, and Malone and Brown have taken no voluntary action that undermines their credibility or puts them in any genuine conflict with the class. Any concern that they would not vigorously contest any defense Defendants might raise against putative class members is, at this point, "merely speculative." *Svoboda v. Amazon.com, Inc.*, No. 21 C 5336, 2024 WL 1363718, at *7 (N.D. Ill. Mar. 30, 2024); *see also Kessler v. Samsung Elecs. Am. Inc.*, No. 17-C-0082, 2019 WL 13165457, at *3 (E.D. Wis. Feb. 13, 2019) (rejecting as "speculative" unsupported suggestion that plaintiff might sell out class members at settlement and distinguishing *Santangelo* because named plaintiff who opted out of arbitration agreement did so for reasons that would not undermine his credibility to challenge defenses asserted against class members).

Where alleged conflicts between plaintiffs and putative class members are merely hypothetical, it is appropriate to grant class certification. *See Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012). Then, in the unlikely event that "the conflicts prove real, the Court may resolve the conflicts by modifying the class definition or "by dividing

some of the subclasses and appointing new class representatives for the newly carved out subclasses." *Id.*[6]

### E.   Any concerns now about the scope of the class can be addressed by modifying the class definition.

To the extent the Court has concerns at this stage about including drivers whose claims are potentially subject to arbitration or class waiver provisions, there is an easy solution: modifying the proposed class definition to exclude drivers who entered into Type 2 contracts (all of which purport to require arbitration and waiver of class claims brought against ASAP or its officers). In general, a potentially overbroad class "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). Even in the cases Defendants cite, for example, the courts modified the class definition where possible to exclude the putative members whose contracts raised purported Rule 23 concerns while preserving the class. *See Eaton*, 2024 WL 1458457, at *7; *In re Titanium Dioxide*, 962 F. Supp. 2d at 864. Should the Court determine that it is necessary to refine the class definition, excluding drivers with Type 2 contract should sufficiently address any Rule 23 concerns. Though that modified definition would still include members whose contracts purportedly waive rights to sue ASAP on a class basis, those members would still have the same claims against Petrosius. And the claims asserted against Petrosius seek the same damages amounts and are based on the same legal theories—i.e., their claims would have

---

[6] Defendants' purported concerns about Plaintiffs' lack of standing to challenge the arbitration or class waiver provisions of absent class members provides even more reason to wait until after a class has been certified—and absent class members are brought into the case—to address any arbitration or class waiver issues. *See Garcia v. Jcpenney Corp., Inc.*, No. 12-CV-3687, 2016 WL 878203, at *7 (N.D. Ill. Mar. 8, 2016) (granting class certification while noting that "the sensible course in this case is to decide whether to certify the class without considering the possibility of arbitration and then allow [the defendant], if it so chooses, to file its motion to compel arbitration").

the same relative value. Thus, even any hypothetical antagonism or conflict between Plaintiffs and the class members would be eliminated merely by excluding Type 2 contracts.

## V.     A Class Action is Superior to Individual Litigation (Rule 23(b)(3)).

Defendants' Rule 23(b)(3) arguments largely rehash their numerosity and commonality arguments, which the Court should reject for the reasons discussed above. The impracticability of joining hundreds of geographically dispersed truck drivers makes a class action far superior to individual litigation, especially where the claims plaintiffs assert are based on common practices and are capable of common resolution. Defendants' citation to Plaintiffs' settlement demand as evidence of the value of Plaintiffs' claims is flatly prohibited by Federal Rule of Evidence 408; even still, a demand based on estimated *average* per-driver values does not undermine Plaintiffs' representation about the value of "many drivers'" claims. Ultimately, however, even potential per-plaintiff damages in the low five figures may not incentivize individual litigation given the time and costs involved. Moreover, duplicating that time and cost across numerous individual lawsuits would be a tremendous waste of resources. That is why plaintiffs regularly bring TILA and IWPCA claims on a class basis and why courts regularly certify those classes as superior to individual actions under Rule 23(b)(3). *See, e.g.*, *Stewart v. Interland, Inc.*, No. 23-CV-3306, 2025 WL 748214, at *9 (N.D. Ill. Mar. 7, 2025) (superiority satisfied for class bringing TILA and IWPCA claims); *Rivers v. Southway Carriers, Inc.*, No. 23 C 738, 2024 WL 579734, at *9 (N.D. Ill. Feb. 13, 2024) (same); *Yata v. BDJ Trucking Co.*, No. 17-CV-03503, 2020 WL 1062332, at *6 (N.D. Ill. Mar. 5, 2020) (same). There is no basis for this Court to reach a different conclusion here.

## <u>Conclusion</u>

For the foregoing reasons and the reasons stated in Plaintiffs' memorandum (ECF No. 253), the Court should grant Plaintiffs' motion for class certification.

Respectfully submitted,

  /s/ Christopher J. Wilmes

Christopher J. Wilmes
Justin Tresnowski
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison St. Suite 4000
Chicago, IL 60602
312-580-0100
cwilmes@hsplegal.com
jtresnowski@hsplegal.com